UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                                              CRIMINAL NO. 3:08cr00107-DPJ-LRA

FRANK E. MELTON, MICHAEL RECIO and
MARCUS WRIGHT

# ORDER

This criminal action is before the Court on the Government's Motion in Limine to Exclude Evidence of Alleged Drug Activity [55]. Following oral argument at a hearing held on November 10, 2008, the Court instructed the parties to further brief this motion. The Court, having considered all submissions and the applicable authority, finds that the Government's motion should be granted in part and denied in part.

I.   Facts/Procedural History

Defendants allegedly destroyed the home, and the contents of the home, at 1305 Ridgeway Street in Jackson, Mississippi in violation of the owner/occupant's rights under the Fourth Amendment to the United States Constitution. The indictment charges Defendants with violating 18 U.S.C. §§ 241, 242, and 924(c).

The Government's motion seeks to exclude "evidence of, or arguments concerning, any history of drug activity in or around 1305 Ridgeway Street in Jackson, Mississippi, or of any police contacts with people at that address, as well as any reference to the home at 1305 Ridgeway Street being a 'crack house.'" Government's Motion [55] at 12. In essence, the Government claims that Defendants should not be allowed to introduce this evidence because it

is not relevant to the essential elements of the charged offenses and could lead to jury confusion or even nullification. *See* FED. R. EVID. 401, 402, 403.

Much of Defendant Melton's original response was lacking in authority and thus requires no attention by the Court. However, Mr. Melton argued at the hearing that the Government must prove that he acted with "evil motive" or "bad purpose" and therefore the history of the residence is relevant and admissible. The Court requested additional briefing on this issue, and the Government and Defendant Melton complied. Defendant Recio has not filed a separate memorandum, but he joined in Defendant Melton's response.

Before analyzing the issue, it is important to note the scope of evidence Defendants wish to use. Defendants deny any attempt to seek acquittal on the general theory that their "actions were taken with the objective of making Jackson a safer place." Melton Supplemental Response [122] at 2. Instead, they contend that the "Mayor's intent and motive was [sic] grounded in helping the tenant of this residence, not in violating any individual's constitutional or federal rights." *Id*. They claim that evidence related to this "intent and motive" is relevant and admissible. The Court agrees to some extent.

II.     Analysis

The essential elements of § 242 are satisfied when "a person (1) acting under color of law; (2) willfully subjects any person to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." *United States v. Daniels*, 281 F.3d 168, 178-79 (5th Cir. 2002) (citing 18 U.S.C. § 242). With respect to the present motion, the parties have offered differing interpretations of what the Government must establish to prove a "willful" deprivation. Defendants claim that, although not a separate element, the

2

Government must demonstrate an "evil motive" or "bad purpose" in purposefully violating an individual's federal rights. The history of illegal conduct at the property is, according to them, relevant. On the other hand, the Government insists that it need only show a knowing and intentional violation; therefore, the evidence is not relevant.

The definition of "willfully" in the context of § 242 traces back to *United States v. Screws*, 325 U.S. 91, 101 (1945). Because the prohibited act under § 242 incorporates shifting concepts of due process and is subject to vagueness concerns, *Screws* interpreted the term "willfully" to require specific intent. Accordingly, the Government must prove a defendant acted with the "purpose to deprive a person of a specific constitutional right." *Screws,* 325 U.S. at 101. It is not sufficient that a defendant possessed a "generally bad purpose." *Id*. at 107. To convict, the jury must find that the defendant had "the purpose to deprive" the victim of a federal right. *Id*.[1]

Since *Screws*, the Government's burden with respect to the willfulness element has not been clear-cut. The Government maintains that proof of a knowing and voluntary deprivation of federal rights is all it must establish. Government's Supplemental Brief [120] at 3. Fifth Circuit Pattern Jury Instruction § 2:18 defines "willfully" to mean "that the defendant committed such act or acts with a bad purpose or evil motive, intending to deprive the victim of that right." It appears that this precise instruction was given in only one case appealed to the Fifth Circuit Court of Appeals. *United States v. Gonzales*, 436 F.3d 560, 570 (5th Cir. 2006). Variation of the instruction found in *United States v. Ragsdale*, are far more prevalent. 438 F.2d 21 (5th Cir.

---

[1]*Screws* is a plurality decision but has been treated as binding with respect to the intent element of § 242. *See, e.g., Anderson v. United States*, 417 U.S. 211, 223 (1974); *United States v. Guest*, 383 U.S. 745, 753-54 (1966); *United States v. Williams*, 341 U.S. 70, 81-82 (1951).

1971). In that case, the trial court instructed the jury that "willfully" means "voluntarily and intentionally, and with the specific intent to do something the law forbids; *that is to say, with bad purpose either to disobey or to disregard the law*." 438 F.2d 21, 24 n.2 (5th Cir. 1971) (emphasis added).

The first clause of the instruction given in *Ragsdale* has been generally employed and affirmed, but the second clause, emphasized above, has taken different forms in cases reviewed by the Fifth Circuit Court of Appeals. Defendants suggest that "willfully" means "with a bad purpose or evil motive to deprive an individual of a federal right." Melton Supplemental Response [122] at 3. This interpretation was recently employed in *United States v. Ramos*, 537 F.3d 439, 464 (5th Cir. 2008). Other cases have affirmed the precise wording of the instruction from *Ragsdale*: "with bad purpose either to disobey or to disregard the law." 438 F.2d at 24 n.2; *see United States v. Aguilar,* 242 F. App'x 239, 243-44 (5th Cir. 2007); *United States v. Garza*, 754 F.2d 1202, 1210 (5th Cir. 1985). Still other variations of the second clause of the instruction have been repeatedly examined and generally affirmed. *United States v. Ruiz*, 213 F. App'x 345, 347-48 (5th Cir. 2007) (affirming trial court's refusal to give pattern instruction in favor of instruction that read: "that is, with a bad purpose or evil motive either to disobey or disregard the law"); *United States v. Dean*, 722 F.2d 92, 94 (5th Cir. 1983) (noting in dicta that instruction complied with precedent when it included phrase, "that is with bad purpose to disobey or disregard the law"); *United States v. Stokes*, 506 F.2d 771, 776-77 (5th Cir. 1975) (affirming instruction that read, "that is with bad purpose to disobey or disregard the law. The specific intent required to convict of this crime is the intent to deprive a person of a constitutional

right."); *but see United States v. Kerley*, 643 F.2d 299 (1981) (finding reversible error in failure to include "evil motive" or "bad purpose" in willfulness instruction under § 242).

These cases demonstrate that within the Fifth Circuit, there is no magic formula for defining "willfully" in the context of § 242. *See United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975) (rejecting argument that *Screws* required a "ritualistic charge to be used in instructing juries in § 242 cases").[2] Rather, the Fifth Circuit has repeatedly affirmed instructions it found to be consistent with the "teachings" of *Screws* "that the term willfully in 18 U.S.C. § 242 implies conscious purpose to do wrong and intent to deprive another of a right guaranteed by the Constitution, federal statutes, or decisional law." *Garza*, 754 F.2d at 1210; *see also Aguilar*, 242 F. App'x at 244; *Sipes*, 388 F.3d at 480 n. 21.

Regardless of the formulation of the "willfulness" element, Defendants are entitled to offer evidence demonstrating that they lacked the requisite intent. *See Garza,* 754 F.2d a 1208 (noting that officers presented defense that they were merely doing their jobs and that they lacked specific intent); *Lynch*, 189 F.2d at 480 (observing that trial court allowed officers to present defense that they surrendered prisoners to mob for reasons inconsistent with requisite specific intent).

As stated in *Pullen v. United States*, "[t]he implication seems to be evident in the *Screws* case that the statute did not intend to make one a criminal if 'his purpose was unrelated to *the*

---

[2]*Cf. United States v. Hunt,* 794 F.2d 1095, 1099-1100 (5th Cir. 1986) (cited in notes to Fifth Circuit Pattern Instruction § 2:18) (rejecting as "ludicrous" suggestion that "willfully," as used in different criminal statute, must include the "magic words" with "bad purpose"). *Hunt* was cited in *United States v. O'Banion*, 943 F.2d 1422, 1430 (5th Cir. 1991) (affirming "willfully" instruction in 31 U.S.C. § 5316 case despite omission of term "with bad purpose") and *United States v. Tooker*, 957 F.2d 1209, 1214 (5th Cir. 1992) (same). *But see Kerley*, 643 F.2d at 303 (distinguishing similar cases as not applicable in context of § 242).

*disregard of any constitutional guarantee.*'" 164 F.2d 756, 759 (5th Cir. 1947) (quoting *Screws*, 325 U.S. at 97). Moreover,

> [t]he question of intent in a case of this sort must of necessity be one for the jury to determine from all the facts and circumstances in evidence. It is not given to a jury to look into a man's mind and read its purposes, but the jury may probe into his words, his knowledge, his experience, his surroundings, his acts and doings and their results, in order to decide the question of intent.

*Crews v. United States*, 160 F.2d 746, 750 (5th Cir. 1947); *see also Ragsdale*, 438 F.2d at 26 (citing *Screws*, 325 U.S. at 107) ("[I]n determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstances."). For this reason, and for reasons stated more fully below, the Court holds that certain evidence related to the property in question is relevant to Defendants' intent.³

Turning to the evidentiary issues at hand, it is again important to note that Defendants do not appear to seek introduction of evidence related to crime fighting in general. Melton Supplemental Response [122] at 2. Instead, they make a narrowly focused request for the Court to allow evidence relevant to the defense that their "intent and motive was [sic] grounded in helping the tenant of this residence, not in violating any individual's constitutional or federal rights." *Id*. So tailored, the Court finds that the proffered evidence should be admitted with certain restrictions.

---

³The Court must obviously determine which of the various willfulness instructions is appropriate in the context of this case. The context will depend, however, on the actual evidence presented at trial, rather than evidence referenced in arguments of counsel. Accordingly, the more precise wording of the instruction will be determined during the charge conference. Nevertheless, the general parameters discussed herein demonstrate that the proper scope of the specific evidence addressed in the Government's motion would be the same under either parties' interpretation of the willfulness element.

Mr. Melton in his more recent submissions contends that he acted by invitation and with the consent of the tenant. According to Mr. Melton, he went to the house having been "notified that drugs were again being sold on the premises." Melton Supplemental Reply [122] at 2. He further states that the tenant "reached out for help." *Id*. If true, such evidence could be probative of whether Defendants acted with the "purpose to deprive a person of a specific constitutional right." *Screws,* 325 U.S. at 101. The information conveyed to Mr. Melton in this alleged request is probative of that issue and would survive challenges under Rules 402 and 403.

In addition, an absolute prohibition against any evidence regarding Defendants' reasons for visiting the property on the night in question would deprive the jury of necessary context. Absent this evidence, the jury might conclude that Defendants acted on a whim and therefore must have acted for the impermissible purpose of violating constitutional rights. Background evidence would also be probative of the tenant's reasons for making the purported request. Therefore, Defendants will be allowed to offer evidence at trial demonstrating their knowledge of the present conditions at the property that precipitated the request for assistance and/or the decision to visit the property. The Court specifically finds that the risk of confusion and unfair prejudice such evidence might present would not substantially outweigh the value of this relevant evidence. FED. R. EVID. 403.

However, the focus of this evidence must be linked to Defendants' knowledge during the relevant time period. Outside the context of what precipitated Defendants' actions that night, the evidence would lose its relevance as to Defendants' intent and merely put the property on trial in a way that would be irrelevant to the essential elements and defenses. Accordingly, there will be certain limitations.

7

First, the Government's motion is granted with respect to historical criminal history at the property. While Defendants will be allowed to establish that they were aware of prior illegal activity at this property, they will not be permitted to catalog specific instances. Such evidence would not be relevant to their intent on the night in question. Even if that historical evidence offered some limited probative value, such value is substantially outweighed by the risk of unfair prejudice and confusion. Specifically, it could inflame passions about crime or mislead the jury into concluding that the ends justified the means and therefore Defendants should be acquitted even if the Government proves its case. FED. R. EVID. 403.

In addition, as Defendants correctly note, the appropriate focus is the subject property and alleged victims. Melton Supplemental Response [122] at 2. Accordingly, evidence regarding other properties and crime in general lacks relevance. FED. R. EVID. 401, 402. This is perhaps implicit in Defendants' response, but to the extent it is not, the Court expressly finds that evidence related to other properties or the surrounding neighborhood would create a risk of unfair prejudice and confusion that substantially outweighs any probative value that might exist for the same reasons cited in the preceding paragraph. FED. R. EVID. 403.

Finally, the use of the term "crack house" or other similar descriptions or colloquialisms will not be permitted because of their strong tendency to invoke passions or inflame the jury. FED. R. EVID. 403.

It is difficult for the Court to anticipate what form the admissible evidence might take at trial, but it would certainly include Defendants' own testimony, that of the individual(s) reporting illegal activity to Defendants or requesting the visit that occurred on the night in question, or

8

those present during such conversations. Beyond that, the parties should first raise the issue outside the presence of the jury.[4]

**SO ORDERED AND ADJUDGED** this the 19th day of December, 2008.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[4]Defendants also sought admissibility of this information claiming that they were conducting a valid "knock and talk." *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). A question of fact exists as to whether this was a valid "knock and talk." *See United States v. Gomez-Moreno*, 479 F.3d 350, 355-56 (5th Cir. 2007) ("[t]he officers made a show of force, demanded entrance, and raided the residence, all in the name of a 'knock and talk.' The officers' 'knock and talk' strategy was unreasonable, and accordingly, the officers created the exigent circumstances"). Nevertheless, the Court need not address the issue. First, it is debatable whether this theory would justify introduction of any evidence of the illegal activity. To the extent it would, the evidence would not exceed that which the Court has already allowed because the basis of a "valid knock and talk" turns on reasonable suspicion that criminal activity is taking place. *Id*. That might make the current conditions relevant, but not the full history of the property. Moreover, the severity and longevity of the alleged illegal activities would not be relevant to establishing a valid "knock and talk," and would instead create the same Rule 403 problems addressed above.